## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| STANLEY BLACK & DECKER (US) INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT FOR CIVIL PENALTIES
## AND PERMANENT INJUNCTIVE RELIEF

### INTRODUCTION

1.　　The Consumer Product Safety Act ("CPSA"), 15 U.S.C. §§ 2051–2089, requires manufacturers, distributors and retailers to immediately notify the Consumer Product Safety Commission ("CPSC") when they become aware of information that reasonably supports the conclusion that a consumer product contains a defect which could create a substantial product hazard or that a consumer product creates an unreasonable risk of serious injury or death. The purpose of this requirement is to bring potentially dangerous consumer products to the attention of the CPSC in a timely fashion, so that it may act swiftly to protect consumers. Congress imposed the immediate notification requirement upon manufacturers, distributors and retailers because they often are in the best position to receive information about defects and hazards in the products they sell.

2.　　Defendant Stanley Black & Decker (US) Inc. ("Black & Decker" or the "company") is a global provider of hand tools, power tools, outdoor products and related

accessories, as well as a leading provider of engineered fastening solutions, with 2024 consolidated annual revenues of $15.4 billion. Its operations are classified into two business segments: Tools & Outdoor and Industrial. The Tools & Outdoor segment carries the DEWALT® brand.

3.    Black & Decker, at all relevant times, was a manufacturer of certain utility bars ("Utility Bars") and miter saws ("Miter Saws") (together, "the Subject Products") for sale to consumers. The Subject Products were sold under the DEWALT® brand.

4.    The Utility Bars are DeWALT 40" multi-functional utility bars, which are tools designed at one end for prying and at the other for gripping boards.

5.    Soon after it began manufacturing the Utility Bars in December 2015, Black & Decker began receiving numerous reports, including reports of serious injuries, directly from consumers and from a national retailer (the "National Retailer") that the Utility Bars had broken unexpectedly while people used them causing lacerations, knee injury and contusions. In addition, the National Retailer gave Black & Decker information showing the reasons why consumers had returned hundreds of the Utility Bars to the National Retailer. By the end of May 2017, Black & Decker had received information from the National Retailer showing that, from May 2016 to May 2017, approximately 393 Utility Bars had been returned to the National Retailer because of manufacturing defects.

6.    Black & Decker did not report the Utility Bar's potential risks or defects to the CPSC at that time.

7.    Black & Decker did not report to the CPSC regarding the Utility Bars until May 9, 2019, long after it had information requiring it to report the potential risks or defects to the CPSC.

8.     Black & Decker also failed to immediately report its Miter Saws' potential risks or defects to the CPSC.

9.     Miter Saws are power tools designed to make certain cuts in various materials including wood, metal and plastic

10.     By February 2021, Black & Decker had received hundreds of complaints regarding the Miter Saws' rear guard and plastic deflector, including injuries to consumers, but it did not report that information to the CPSC at that time.  It was not until December 2021, when workers at a distribution center discovered broken rear guards on unused Miter Saws, that Black & Decker even initiated an investigation into the Miter Saws' defects.  Black & Decker delayed reporting to the CPSC on the Miter Saws until February 21, 2022. By that time, Black & Decker was aware of three serious laceration injuries related to use of the Miter Saws, 148 complaints about the Miter Saws, and a high rate of returns by their users to national retailers.

11.     Because Black & Decker did not immediately report the Utility Bars' and the Miter Saws' potential risks and defects, the consumers who used them were placed at risk of a serious injury and many of them were, in fact, seriously injured.

12.     Plaintiff United States of America brings this action under the CPSA, 15 U.S.C. §§ 2051-89, and seeks civil penalties and injunctive relief against Black & Decker because it received information that reasonably supported the conclusion that the Subject Products contained defects that could create a substantial product hazard or that the Subject Products created an unreasonable risk of serious injury or death, but it knowingly failed to immediately report the Subject Products to the CPSC.

**JURISDICTION AND VENUE**

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355(a) and 15 U.S.C. § 2071(a).

14.     Venue in the District of Maryland is proper under 28 U.S.C. §§ 1391(b), (c) and 1395(a).

**DEFENDANT**

15.     Black & Decker is a Maryland corporation located in Towson, Maryland.

16.     Black & Decker manufactures, distributes and sells power tools, garden tools, and home and kitchen appliances.

17.     At all relevant times, in this District, Black & Decker has conducted business related to the importation, manufacture, distribution, and sale of the Utility Bars and the Miter Saws.

18.     At all relevant times, Black & Decker was a "manufacturer" of the Utility Bars and the Miter Saws, as defined in 15 U.S.C. § 2052(a)(11).

19.     The Utility Bars and Miter Saws are "consumer product[s]" as that term is defined in 15 U.S.C. § 2052(a)(5).

20.     The Subject Products were produced or distributed: "(i) for sale to a consumer for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise; or (ii) for the personal use, consumption or enjoyment of a consumer in or around a permanent or temporary household or residence, a school, in recreation, or otherwise."  15 U.S.C. § 2052(a)(5).

## THE CONSUMER PRODUCT SAFETY COMMISSION

21.     The CPSC is a federal agency established by Congress to protect the public against unreasonable risks of injury from consumer products.  15 U.S.C. § 2051(b).  The CPSC is located at 4330 East West Highway, Bethesda, Maryland.

22.     The CPSA requires that every manufacturer, distributor, or retailer of a consumer product distributed in commerce "who obtains information which reasonably supports the conclusion that such product . . . contains a defect which could create a substantial product hazard . . . shall immediately inform the [CPSC] . . . of such defect" unless such manufacturer, distributor, or retailer "has actual knowledge that the [CPSC] has been adequately informed of such defect . . . ."   15 U.S.C. § 2064(b)(3).  Congress defines "substantial product hazard" at 15 U.S.C. § 2064(a)(2) to include a product defect that "creates a substantial risk of injury to the public."

23.     The CPSA also requires that every manufacturer, distributor, or retailer of a consumer product distributed in commerce "who obtains information which reasonably supports the conclusion that such product . . . creates an unreasonable risk of serious injury or death, shall immediately inform the [CPSC] of such . . .  risk" unless the manufacturer or retailer "has actual knowledge that the [CPSC] has been adequately informed . . . of such risk."  15 U.S.C. § 2064(b)(4).

24.     "[S]erious injury or death" may include any significant injury, including injuries necessitating hospitalization that require medical or surgical treatment and lacerations requiring sutures, injuries to the internal organs requiring medical treatment, and injuries necessitating absence from school or work of more than one day.  16 C.F.R. § 1115.6(c).

25.    CPSC regulations define "immediately" as "within 24 hours" after a company has obtained the requisite information regarding a defect or unreasonable risk.  16 C.F.R. § 1115.14(e). A company should not wait for a serious injury to occur before reporting.  16 C.F.R. § 1115.6(a).

26.    Failing to furnish information required by 15 U.S.C. § 2064(b) is prohibited by the CPSA.  15 U.S.C. § 2068(a)(4).

27.    In deciding whether to report, a company should consider a broad set of information, including "information received from other firms such as distributors and retailers, such as return requests."  16 C.F.R. § 1115.12(f).

28.    Any person who knowingly violates 15 U.S.C. § 2068 is subject to civil penalties. 15 U.S.C. § 2069(a)(1).  The CPSA defines "knowingly" as "(1) the having of actual knowledge, or (2) the presumed having of knowledge deemed to be possessed by a reasonable man who acts in the circumstances, including knowledge obtainable upon the exercise of due care to ascertain the truth of representations."  15 U.S.C. § 2069(d).

29.    Congress imposed the CPSA reporting requirements upon manufacturers, distributors, and retailers to protect public health and safety; the sooner the CPSC knows of a potential problem, the sooner it can investigate and take necessary action, including notifying the public of the hazard, announcing voluntary corrective action with the relevant entity, and/or initiating an enforcement action.

## FACTUAL BACKGROUND

### The Utility Bars

30.    Between approximately December 2015 and March 2019, Black & Decker manufactured approximately 144,817 Utility Bars for distribution in the United States.

31.     The Utility Bars sold for approximately $29.97 to $39.97, both by Black & Decker direct to consumers and by retail stores and chains.

32.     Soon after Black & Decker began manufacturing the Utility Bars in 2015, it began receiving recurring complaints from consumers that the Utility Bars were breaking. Many users informed Black & Decker that the Utility Bars had broken after very little use, including the very first time or the first week they were used. Others informed Black & Decker that they had used multiple Utility Bars, all of which broke in the same spot. For example, in September 2016, one consumer reported that he had used five Utility Bars that broke in a single week. Another consumer reported that he nearly fell into his basement when a Utility Bar broke during use.

33.     On or around February 13, 2017, a consumer reported to Black & Decker that he was using the Utility Bar when it snapped, causing him to fall back, flip over, and tear his anterior cruciate ligament in his knee. He also reported that a piece of the broken Utility Bar hit him in the side and punctured the side of his ribs, and that his leg fell through a floorboard. When this injury occurred, Black & Decker had already received at least six complaints that its Utility Bars broke while in use.

34.     Black & Decker obtained and tested the Utility Bar that caused this injury. Based on this testing, Black & Decker concluded that the steel in the Utility Bar was below the specified hardness and cracks may have formed in it during its manufacture.

35.     On or around May 10, 2017, Black & Decker was informed that a person had been injured when a Utility Bar that he was using had broken, causing the Utility Bar's tip to hit him in the head and requiring three stitches. Black & Decker also tested the Utility Bar involved in that injury. It concluded that the Utility Bar was not wide enough and could not meet the expected demands on the product.

36.    By the end of May 2017, Black & Decker had received seventeen complaints directly from consumers warning the company that Utility Bars had broken during use; in some instances, individual consumers had worked with multiple Utility Bars that broke.

37.    In addition to having received complaints directly from consumers between 2015 and 2017, the company also learned about problems with the Utility Bar from its retailers. Starting no later than May 2016, one National Retailer sent the company daily reports about Black & Decker products that customers had returned. These daily return reports showed the reasons consumers listed for each return. One specific reason frequently marked by consumers to justify returning the Utility Bar was that there was a defect.

38.    By the end of May 2017, Black & Decker had received daily reports showing that, from May 2016 to May 2017, approximately 393 Utility Bars had been returned to the National Retailer because of a defect.

39.    After May 2017, the Utility Bars continued breaking and injuring consumers. On January 14, 2019, another person reported to Black & Decker that he was injured when the Utility Bar that he was using snapped and stabbed him, opening a four-inch hole in his abdomen.

40.    On March 22, 2019, Black & Decker learned from a National Retailer that on March 5, 2019, another consumer had suffered an injury while using the Utility Bar, which snapped back and hit him in the chest. The National Retailer also informed Black & Decker that it had notified the CPSC of this injury related to use of the Utility Bar.

41.    Also in March 2019, Black & Decker learned that, during the previous 12-month period alone, approximately 2,500 Utility Bars had been returned to the National Retailer. Many of those Utility Bars were returned because they had reportedly broken.

42.     After learning that the National Retailer had informed the CPSC of the serious injury that occurred March 5, 2019, Black & Decker submitted a full report under Section 15(b) to the CPSC for the Utility Bars on May 9, 2019.

43.     In its June 7, 2019 supplement to that report, Black & Decker reported that it had received approximately fifty-two additional complaints from consumers that the Utility Bars had broken during use.

44.     Before Black & Decker's May 9, 2019 Utility Bar report to the CPSC, the CPSC had not been adequately informed that the Utility Bars contained a defect or defects that could create a substantial product hazard or that the Utility Bars created an unreasonable risk of serious injury or death.

45.     On September 26, 2019, Black & Decker and the CPSC issued a joint press release announcing a recall of the Utility Bars.  The press release stated that the Utility Bar "can break while being used for prying, posing an injury hazard to the user."

<u>The Miter Saws</u>

46.     Following Black & Decker's failure to timely report the Utility Bar's defects to the CPSC and subsequent recall of the Utility Bars in 2019, the company failed to report the defects and risks of another hazardous product – the Miter Saw.

47.     From January 2019 to January 2022, Black & Decker manufactured approximately 1.3 million Miter Saws for distribution in the United States.

48.     Miter Saws sold for approximately $599 to $819 each.  Three national retailers, including the National Retailer, sold Miter Saws.

49.     Miter Saws consist of multiple parts, including a plastic rear guard and a plastic dust deflector attached to the rear guard.  Miter Saws are power tools marketed as a multi-

functional cutting tool allowing professional contractors and "do-it-yourself" consumers to cut wood and other materials.

50.     Between August 2020 and March 2022, Black & Decker received information about at least seven incidents where the Miter Saw's rear guard or plastic deflector broke and injured the user or a bystander.  Such injuries ranged from broken fingers to lacerations to hands, arms, and faces.

51.     Within a five-month period in 2020, Black & Decker received three reports of injuries caused by the rear guard or the deflector breaking.

52.     On August 4, 2020, the rear guard on a Miter Saw broke and cut a consumer's arm.

53.     On November 30, 2020, a consumer reported to Black & Decker that the deflector "sent shattered plastic into [his] face" and described the incident as "[e]xtremely frightening."

54.     On December 3, 2020, Black & Decker received a report from a consumer who reported that his wife was injured when a Miter Saw's deflector broke and struck her, causing a broken and lacerated finger that required medical attention.

55.     Additional consumers reported to Black & Decker that the rear guard had exploded. On January 6, 2021, a consumer reported to Black & Decker that while he was using a Miter Saw, the blade contacted an object and hard plastic exploded out of the Miter Saw.   The consumer reported that he sustained a cut on his left hand.

56.     Return data from the National Retailer indicated defects with the Miter Saws.

57.     During a six-week period between January and February 2021, Black & Decker received from the National Retailer 76 reports of Miter Saw returns with an indication from consumers that the Miter Saws were "damaged," "broken," "defective," or had a "safety issue" discovered.

58.     Black & Decker also learned of high return rates at several other national retailers; for example, between April 1, 2019, and February 18, 2021, two other national retailers each received 768 and approximately 1,500 returns of the Miter Saws.

59.     In 2021, the Miter Saws caused additional injuries to consumers.  In April 2021, the rear guard broke, and a plastic piece was ejected and cut a consumer's finger.  Two months later, in July 2021, another consumer reported the rear guard broke, causing a piece of plastic to fly towards him and lacerate his thumb. On October 24, 2021, a customer reported that the rear guard shattered and struck him in the face causing a laceration.  In November 2021, a consumer reported the rear deflector fell off and struck his nose and glasses, breaking his glasses and causing a cut to his face.

60.     Black & Decker did not use the information it received from consumers and retailers to initiate an investigation into the product.

61.     Rather, on December 6, 2021, employees at a Black & Decker distribution center who were installing batteries in unused Miter Saws discovered broken rear guards in the bottom of shipping cartons.

62.     It was this discovery by Black & Decker employees—rather than reports of injuries, reports of product defects, and reports of returns—that prompted the company's investigation of the Miter Saws beginning in December 2021.

63.     And it was not until January and February 2022 that Black & Decker reviewed its own customer service database and identified the numerous consumer complaints that had been directly submitted directly to Black & Decker concerning the Miter Saws' broken rear guards.

64. Black & Decker waited until February 21, 2022, to submit to the CPSC an initial report for the Miter Saws pursuant to 15 U.S.C. § 2064(b). On April 29, 2022, Black & Decker submitted to the CPSC a full report for the Miter Saws.

65. Before Black & Decker's February 21, 2022 Miter Saw report, the CPSC had not been adequately informed that the Miter Saws contained a defect or defects that could create a substantial product hazard or that the Miter Saws created an unreasonable risk of serious injury or death.

66. On August 4, 2022, Black & Decker and the CPSC jointly recalled three out of the four Miter Saw models. The press release announcing the recall stated that "[t]he miter saw's rear safety guard can break or detach, posing an injury hazard due to projectiles that can strike the user and bystanders and a laceration hazard to the user who could come into direct contact with the saw blade."

67. The recall announcement further stated that Black & Decker had received 571 reports of the rear safety guard assembly or components breaking or detaching, including nine reports of laceration injuries.

<u>Black & Decker's History of Noncompliance</u>

68. On multiple occasions, Black & Decker has resolved allegations of CPSA reporting violations with respect to other alleged product hazards.

69. On December 3, 1986, Black & Decker agreed to pay a civil penalty based on allegations that it had knowingly failed to report in a timely manner defects in certain of its Push Button Command Feed Weed/Grass Trimmers that could cause parts of the product to shatter during use and propel plastic pieces that could seriously injure bystanders.

70.     On November 12, 1991, Black & Decker agreed to pay a civil penalty to resolve allegations that it had knowingly failed to report in a timely manner a defect in approximately 650,000 grass/weed trimmers.

71.     On December 30, 1999, Black & Decker agreed to pay a civil penalty to resolve allegations that it had knowingly failed to report in a timely manner defects in its Spacemaker Under-the-Cabinet Toasters. The settlement agreement stated that the company had received more than 1,000 complaints of food fires, 12 involving burn injuries and about 850 involving property damage, due to the product's defects.

72.     On August 3, 2011, Black & Decker agreed to pay a civil penalty to resolve allegations that it had knowingly failed to report several safety defects associated with the Grasshog XP Weed Trimmer/Edger which had posed a serious laceration hazard to the product's user and to bystanders.

73.     On April 29, 2015, Black & Decker agreed to pay a civil penalty and enter into a consent decree (the "Consent Decree") with the United States in *United States of America v. Black & Decker (U.S.) Inc.,* Case 1:15-cv-01239-GLR, to resolve allegations that it had failed to immediately report to the CPSC information that reasonably supported the conclusion that certain cordless electric lawnmowers it manufactured contained a defect that could create a substantial product hazard, and created an unreasonable risk of serious injury or death. On May 13, 2015, this Court issued the Consent Decree. A true and correct copy of the Consent Decree is attached as Exhibit A to this Complaint.

74.     This Court's Consent Decree ordered Black & Decker, among other things, to maintain a compliance program and a system of internal controls meant to ensure that it complies with the CPSC's safety statutes and regulations including the CPSA's reporting requirement.

75.     Despite the terms of the Consent Decree issued by this Court and the hundreds of complaints and injuries relating to the Subject Products here, Black & Decker has continued to violate CPSA's reporting requirements.

76.     Black & Decker's prior history and the violations alleged in this case mandate injunctive relief and civil penalties to prevent and deter continuing and future violations by the company.

## COUNT I

### (Utility Bars – Failure to Furnish Information Under 15 U.S.C. § 2064(b))

77.     Paragraphs 1-76 are incorporated by reference and realleged as if set forth fully herein.

78.     Separately as to each individual Utility Bar that Black & Decker manufactured, imported, distributed, offered for sale, or sold in commerce, Black & Decker knowingly failed to immediately inform the CPSC in violation of 15 U.S.C. § 2068(a)(4) upon obtaining information that reasonably supported the conclusion that its Utility Bars contained a defect or defects that could create a substantial product hazard, (*i.e.*, a defect or defects that could create a substantial risk of injury to the public) or the conclusion that its Utility Bars created an unreasonable risk of serious injury or death, as required by 15 U.S.C. § 2064(b).  These violations started when Black & Decker obtained information reasonably supporting the conclusion that the Utility Bars

contained such a defect or created such a risk and continued until it informed the CPSC about the potential defect or risk.

## COUNT II

### (Miter Saws – Failure to Furnish Information Under 15 U.S.C. § 2064 (b))

79.     Paragraphs 1-78 are incorporated by reference and realleged as if set forth fully herein.

80.     Separately as to each individual Miter Saw that Black & Decker manufactured, imported, distributed, offered for sale, or sold in commerce, Black & Decker knowingly failed to immediately inform the CPSC in violation of 15 U.S.C. § 2068(a)(4) upon obtaining information that reasonably supported the conclusion that its Miter Saws contained a defect or defects that could create a substantial product hazard, (*i.e.*, a defect or defects that could create a substantial risk of injury to the public) or the conclusion that its Miter Saws created an unreasonable risk of serious injury or death, as required by 15 U.S.C. § 2064(b).  These violations started when Black & Decker obtained the information reasonably supporting the conclusion that the Miter Saws contained such a defect or created such a risk and continued until it informed the CPSC about the potential defect or risk.

## JURY DEMAND

The United States demands a trial by jury on all Counts so triable.

## RELIEF REQUESTED

WHEREFORE, the United States respectfully requests that this Court:

I.     Assess civil penalties against Black & Decker, in accordance with 15 U.S.C. § 2069, for each separate violation and the related series of violations alleged Count I and for each separate violation and the related series of violations alleged in Count II.

II.    Award Plaintiff injunctive relief against Defendant, in accordance with 15 U.S.C. § 2071(a)(1).

III.    Award Plaintiff such other and further relief that this Court deems just and proper.

Dated: December 22, 2025                  Respectfully submitted,

                                          BRETT A. SHUMATE
                                          Assistant Attorney General
                                          JORDAN C. CAMPBELL
                                          Deputy Assistant Attorney General
                                          SARMAD M. KHOJASTEH
                                          Senior Counsel
                                          Civil Division

                                          LISA K. HSIAO
                                          Acting Director
                                          ZACHARY A. DIETERT
                                          Assistant Director

                                          *Paulina Stamatelos*
                                          PAULINA STAMATELOS
                                               New York Bar No.: 4351649
                                            JOSHUA A. FOWKES
                                               Washington D.C. Bar No.: 494700
                                          NICOLE FRAZER
                                               Virginia Bar No.: 96978
                                          Trial Attorneys
                                          U.S. Department of Justice
                                          Enforcement & Affirmative
                                          Litigation Branch
                                          Enforcement Section
                                          450 5th Street, NW, Suite 6400-S
                                          Washington, DC 20044-0386
                                          (202) 353-7744 (Stamatelos)
                                          (202) 532-4218 (Fowkes)
                                          (202) 305-7386 (Frazer)
                                          Fax: (202) 514-8742
                                          Pauline.A.Stamatelos@usdoj.gov
                                          Joshua.A.Fowkes@usdoj.gov
                                          Nicole.Frazer@usdoj.gov

                                          Kelly O. Hayes

United States Attorney


By:      / s /
                              Rebecca A. Koch
                                 Assistant United States Attorney
                                 Bar number: 802108
                              6406 Ivy Lane, Suite 800
                              Greenbelt, MD 20770
                              Telephone: (301) 344-4233
                              Facsimile: (410) 962-2310


OF COUNSEL:

MATTHEW A. CAMPBELL
General Counsel
MELISSA V. HAMPSHIRE
Assistant General Counsel
PATRICIA K. VIEIRA
Attorney
Office of the General Counsel
U.S. Consumer Product Safety Commission
Bethesda, MD 20814

MARY MURPHY
Director
LEAH WADE
Supervisory Attorney
Enforcement and Litigation
Office of Compliance and Field Operations
U.S. Consumer Product Safety Commission
Bethesda, MD 20814

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BLACK & DECKER (U.S.) INC.,
A Maryland Corporation

    Defendant.

Case GLR - 15 - 1239

**CONSENT DECREE OF CIVIL**
**PENALTY AND PERMANENT**
**INJUNCTION**

Plaintiff, the United States of America, has commenced this action by filing a Complaint for Civil Penalties and Permanent Injunctive Relief pursuant to 15 U.S.C. §§ 2068(a)(4), 2069, and 2071(a), against Black & Decker (U.S.) Inc. ("Black & Decker" ). Black & Decker has waived service of the summons and the complaint.

The parties, represented by the counsel identified below, have agreed to this settlement of the action without adjudication of any issue of fact or law and consent to the entry of this Consent Decree of Civil Penalty and Permanent Injunction ("Decree"). Therefore, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. In its Complaint, the United States alleges that Black & Decker knowingly violated the requirement contained in the Consumer Product Safety Act ("CPSA"), to immediately furnish to the Consumer Product Safety Commission ("CPSC" or "Commission") the information required by 15 U.S.C. § 2064(b). The Complaint alleges that Black & Decker obtained information which reasonably supported the conclusion that the cordless electric lawnmowers that Black & Decker manufactured and distributed (1) contained a defect that could

1

Case 1:25-cv-04224-SLC   Document 1   Filed 05/23/25   Page 19 of 24
Case 3:15-cv-01239-GLR   Document 2   Filed 05/13/15   Page 2 of 7
Case 1:15-cv-01239-GLR   Document 1-2   Filed 04/29/15   Page 2 of 7

create a substantial product hazard, and (2) created an unreasonable risk of serious injury or death.

2.   In its Complaint, the United States asserts that Black & Decker previously paid civil penalties for violations of the same statutory requirements referenced in this action, and further alleges that there is a reasonable likelihood that Black & Decker will violate the CPSA reporting requirement in the future.

3.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355(a) and 15 U.S.C. § 2071(a).

4.   Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b), (c), and 1395(a).

5.   The Complaint states a claim upon which relief may be granted against Black & & Decker under the CPSA. 15 U.S.C. §§ 2068(a), 2069(a), 2071(a).

6.   At all relevant times, Black & Decker was a "manufacturer," as defined in 15 U.S.C. § 2052(a)(11), of the cordless electric lawnmowers described in the Complaint.

7.   Black & Decker enters into this Decree freely and without coercion. Black & Decker further acknowledges that it has read the provisions of this Decree and is prepared and able to abide by them.

8.   The United States believes settlement of this case on the terms described below is in the public interest and that injunctive relief is necessary to prevent future violations of the CPSA.

9.   Black & Decker does not admit that the law has been or is likely to be violated, but believes settlement is appropriate to avoid the time and expense of litigation.

10.   Black & Decker waives any claim that it may hold under the Equal Access to

2

Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date this Decree is entered by the Court. All parties agree to bear their own fees, costs, and attorneys' fees.

## I. CIVIL PENALTY

A.     Black & Decker shall pay one million five hundred seventy-five thousand dollars ($1,575,000.00) to the United States as a civil penalty, pursuant to 15 U.S.C. § 2069. Within fourteen calendar days after entry of this Decree, Black & Decker shall transfer the civil penalty payment in the form of an electronic fund transfer in accordance with the procedures specified by the Consumer Protection Branch, Civil Division, U.S. Department of Justice, Washington, DC 20530.

B.     In the event of any default in payment required in Paragraph A, the entire unpaid amount shall constitute a debt due and immediately owing by Black & Decker to the United States, and interest shall accrue and be paid by Black & Decker at the federal legal rate of interest set forth at 28 U.S.C. § 1961 from the date of default until the payment has been paid in full.

C.     Black & Decker relinquishes all dominion, control, and title to the funds paid to the fullest extent permitted by law. Black & Decker shall make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise.

D.     The judgment amount set forth in this Section represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and, therefore, is not subject to discharge under the Bankruptcy Code pursuant to 11 U.S.C. § 523(a)(7).

E.     Black & Decker agrees that the facts as alleged in the Complaint filed in this action shall be taken as true, without further proof, in any subsequent civil litigation filed by or

3

on behalf of the United States to enforce its rights to payment under this Section.

## II. INJUNCTIVE RELIEF

A.     Black & Decker shall ensure that its existing, compliance program is designed to ensure compliance with the safety statutes and regulations enforced by the Commission and shall continue to implement and shall maintain a compliance program that, at a minimum, contains the following elements:

> i.   written standards and policies;
>
> ii.  a mechanism for confidential employee reporting of compliance-related questions or concerns to either a compliance officer or to another senior manager with authority to act as necessary;
>
> iii. procedures for reviewing claims and reports for safety concerns and for implementing corrective and preventive actions when compliance deficiencies or violations are identified;
>
> iv.  effective communication of company compliance-related policies and procedures to all employees through training programs or otherwise;
>
> v.   senior manager responsibility for compliance and accountability for violations of the statutes and regulations enforced by the Commission;
>
> vi.  oversight of compliance by a Black & Decker governing body; and
>
> vii. retention of all records reasonably related to compliance with the safety statutes enforced by the CPSC for at least five (5) years and availability of such records to CPSC staff upon request.

B.     Black & Decker shall maintain, enforce, and ensure that its existing controls include, a system of internal controls and procedures designed to ensure that:

4

> i. information required by law to be disclosed by Black & Decker to the
> CPSC is recorded, processed and reported in accordance with
> applicable law;
>
> ii. all reporting made to the CPSC is timely, truthful, complete, and
> accurate; and
>
> iii. prompt disclosure is made to Black & Decker's management of any
> material deficiencies or material weaknesses in the design or operation
> of such internal controls that are reasonably likely to adversely affect
> in any material respect Black & Decker's ability to record, process,
> and report to the CPSC in accordance with applicable law.

C.     Black & Decker shall provide to the CPSC written documentation of such
improvements, processes, and controls, including, but not limited to, the effective dates of such
improvements, processes, and controls, upon request by the CPSC staff. Black & Decker shall
cooperate fully and truthfully with CPSC staff and shall make available all information,
materials, and personnel reasonably necessary for CPSC staff to evaluate Black & Decker's
compliance with the terms of the Decree, subject to applicable privileges, and with provision for
maintaining the confidentiality of confidential information in accordance with 15 U.S.C. § 2055.

## III. MISCELLANEOUS PROVISIONS

A.     This Decree shall be binding on the successors and assigns of Black & Decker,
and any such successors and assigns shall be subject to the terms of this Decree.

B.     For a period of five years from the entry of this Decree by the Court, Black &
Decker shall notify the CPSC General Counsel in writing within thirty (30) calendar days after
any reorganization, consolidation, merger, acquisition, dissolution, assignment, sale, transfer or

5

similar transaction or series of transactions resulting in a successor entity, the transfer or disposition of substantially all of the assets of Black & Decker or any other changes in corporate structure that may affect compliance obligations arising out of this Decree.

C.    Black & Decker shall notify the CPSC General Counsel in writing within fourteen (14) calendar days after any change in the person to which communications from the CPSC should be addressed.

D.    If, at any time after entry of this Decree, Black & Decker fails to comply with any provisions of this Decree, Black & Decker shall pay to the United States liquidated damages in the sum of one thousand dollars ($1,000) for each day that Black & Decker fails to comply with the Decree. Black & Decker understands and agrees that the liquidated damages specified in this paragraph are not punitive in nature and that they do not in any way limit the ability of the United States to seek, and the Court to impose, additional criminal or civil contempt penalties based on conduct that may also be the basis for the payment of liquidated damages.

E.    The provisions of this Decree are separate and severable from one another. If any provision is stayed or determined to be invalid, the remaining provisions shall remain in full force and effect.

F.    This Court retains jurisdiction of this matter for the purpose of enabling any of the parties to this Decree to apply to the Court at any time for such further orders or directives as may be necessary or appropriate for the enforcement of compliance therewith, or for the punishment of violations thereof.

G.    The United States may seek reasonable costs and attorneys' fees upon succeeding in a suit to enforce this Decree.

H.    The parties, by their respective counsel, hereby consent to entry of the foregoing

6

Decree, which shall constitute a final judgment and Order in this matter. The parties further stipulate and agree that the entry of the foregoing Decree shall constitute full, complete, and final settlement of this action.

**The Clerk is DIRECTED to CLOSE this case.**

SO ORDERED, this 13TH day of May , 2015.

**George L. Russell, III**
**United States District Judge**

FOR THE UNITED STATES:

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

MICHAEL S. BLUME
Director

JILL FURMAN
Deputy Director
Consumer Protection Branch
Department of Justice, Civil Division
450 Fifth St., NW, 6400-S
Washington, DC 20001
Jill.Furman@usdoj.gov

OF COUNSEL:

STEPHANIE TSACOUMIS
General Counsel
MELISSA V. HAMPSHIRE
Assistant General Counsel
U.S. Consumer Product Safety Commission

PATRICIA K. VIEIRA
Attorney
Office of the General Counsel
U.S. Consumer Product Safety Commission
Bethesda, MD 20814

FOR BLACK & DECKER U.S. INC.

THEODORE C. MORRIS
Assistant General Counsel and Assistant
Secretary

TIMOTHY L. MULLIN, JR.
Federal Bar No. 00082
Miles & Stockbridge P.C.
100 Light Street
Baltimore, MD 21202
(410)385-3641
TMullin@MilesStockbridge.com

7